J-S47007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SUILAMON JEFFERSON | |
| Appellant | No. 2764 EDA 2015 |

Appeal from the Judgment of Sentence August 31, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012934-2012

*****

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SUILAMON JEFFERSON | |
| Appellant | No. 2766 EDA 2015 |

Appeal from the Judgment of Sentence August 31, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012936-2012

BEFORE:  LAZARUS, J., MOULTON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                          **FILED AUGUST 24, 2017**

In these consolidated appeals,[1] Suilamon Jefferson ("Suilamon") appeals from the judgments of sentence, imposed in the Court of Common Pleas of Philadelphia County, after he was found guilty of one count each of aggravated assault[2] (F2), conspiracy to commit aggravated assault[3] (F2), possession of an instrument of a crime[4] (M1), simple assault[5] (M2), and recklessly endangering another person[6] (M2) at each docket number.[7] We affirm in part, vacate in part and remand for resentencing.

On September 10, 2012, police responded to a disturbance at the home of Crystal Roame ("Roame"), located at 5122 North Fairhill Street in Philadelphia. The police instructed the neighbors to disperse from the residence. Zakia Jackson and her family lived two houses away from Roame at 5118 North Fairhill Street. Jackson and her family have a history of disagreements with neighbors on the 5100 block of North Fairhill Street. On

_____

[1] On October 1, 2015, this Court *sua sponte* consolidated Suilamon's two separately filed appeals at 2764 EDA 2015 and 2766 EDA 2015. **See** Pa.R.A.P. 513.

[2] 18 Pa.C.S. § 2702(a).

[3] 18 Pa.C.S. § 903(c).

[4] 18 Pa.C.S. § 907(a).

[5] 18 Pa.C.S. § 2701(a).

[6] 18 Pa.C.S. § 2705.

[7] CP-51-CT-0012934 and CP-51-CR-0012936.

the day of the incident, Suilamon, his brother and co-defendant Jahad Jefferson ("Jahad"), six women, and two other men were at Jackson's residence.

After the neighbors dispersed and the police left the scene, Roame, her daughters Kira Truesdale and Kaysha Roame, and other family members congregated on Roame's porch when they realized that something had been thrown at the residence. At this time, Jackson and several other neighbors, including Suilamon, approached the Roame residence shouting, "don't cry, don't cry, don't be crying after we finish with you all." N.T. Waiver Trial, 5/23/2013, at 110. The altercation became physical when Jahad blocked Truesdale's entrance to Roame's home and Truesdale attempted to evade Jahad and enter the home. Suilamon struck Truesdale in the head with a metal pipe. Suilamon then struck Roame in the head with the metal pipe. Jahad also struck Kaysha Roame on the arm with an aluminum baseball bat.

Philadelphia Police Officer Joseph Burke was dispatched to the scene, where he detained Suilamon and Jahad after observing Suilamon carrying a three-foot metal pipe and Jahad wearing a blood-stained shirt. When Officer Burke returned with Suilamon and Jahad to the scene, Roame and Kira Truesdale identified the co-defendants as their attackers. The victims, including Kaysha Roame, were then taken to Einstein Medical Center for treatment. Crystal Roame received eighteen stitches in her head, Kira Truesdale received eight staples in her head, and Kaysha Roame received treatment for a fractured arm.

Suilamon waived his right to a jury trial and was convicted on all counts after a waiver trial on May 23, 2013. When Suilamon failed to appear for his sentencing hearing on July 15, 2013, a bench warrant was issued for his arrest. Suilamon was later arrested on March 15, 2015. A judge-only bench warrant hearing occurred on August 31, 2015, at which time Suilamon was sentenced.

The trial court sentenced Suilamon to five to ten years' incarceration for the aggravated assault and conspiracy to commit aggravated assault charges, on each docket number. These sentences were ordered to run concurrently. Suilamon was sentenced to three years' probation for possession of an instrument of a crime and two years' probation for each offense of simple assault and recklessly endangering another person on each docket number. The probationary sentences were ordered to run concurrent to each other, but consecutive to the periods of incarceration.

Suilamon filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, followed by a supplemental statement on March 23, 2016. The trial court filed its Rule 1925(a) opinion on November 22, 2016.

On appeal, Suilamon raises the following issues for our review:

(1) Did the court illegally sentence appellant on charges that he was not found guilty of?

(2) Did the court illegally sentence appellant on simple assault where it merged into the aggravated assault charge for sentencing purposes?

> (3) Did the court illegally sentence appellant on simple assault M2 and REAP M2 to three years['] probation on each offense where the maximum penalty allowed is two years?

Brief of Appellant, at 3.

We note that in his Rule 1925(b) statement Suilamon raises sufficiency of the evidence claims. However, in his appellate brief, he has abandoned those claims and raises three legality of sentence issues. This is not fatal to review of his claims, however, because "[a] challenge to the legality of sentence . . . need not be preserved and is never waivable." **Commonwealth v. Foster**, 17 A.3d 332, 334 n.1 (Pa. 2011). **See also Commonwealth v. Melvin**, 103 A.3d 1, 52 (Pa. Super. 2014) (challenges to legality of sentence are not waivable and may be reviewed *sua sponte* by this Court).[8]

Suilamon argues that the trial court judge illegally sentenced him on charges for which he was not convicted based on confusion between docket numbers.

An appellate court must review the records entered by the trial court when determining whether a defendant was sentenced on charges for which he was not convicted. **Commonwealth ex rel. Woods v. Howard**, 378 A.2d 370, 372 (Pa. Super. 1977). Typically, the text of a sentencing order

_____

[8] When reviewing a claim challenging the legality of a sentence, this Court's standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009).

and not the statements a trial court makes about a defendant's sentence is determinative of the court's sentencing intentions and the sentence imposed. **See Commonwealth v. Borrin**, 12 A.3d 466 (Pa. Super. 2011) (en banc). Accordingly, "oral statements made by the judge in passing sentence, but not incorporated in the written judgment signed by him, are not part of the judgment of sentence." **Howard, supra** at 372.

Suilamon claims that the trial court judge recited co-defendant Jahad Jefferson's docket number,[9] and not his, at the conclusion of his waiver trial, thus resulting in an illegal sentence. Further, Suilamon claims that during sentencing, neither the judge, the court clerk, nor his defense attorney mentioned charges that corresponded to his docket numbers.

At the beginning of the waiver trial, the trial court established that Suilamon was being charged for crimes based on CP-51-CT-0012934 and CP-51-CR-0012936, the correct docket numbers. N.T. Waiver Trial, 5/23/2013, at 14. The trial court's August 31, 2015 sentencing order indicates that Suilamon was sentenced on the correct charges under the correct docket number for which he was convicted. A review of the trial court's docket and the sentencing transcripts further establish that Suilamon

_____

[9] At the conclusion of the waiver trial on May 23, 2013, Judge Covington mistakenly advised the court that she was convicting Suilamon of the charges on docket number CP-51-CR-0012932-2012. This was co-defendant Jahad Jefferson's docket number.

was correctly sentenced; any oral statements pertaining to incorrect docket numbers not incorporated in the written judgment are not part of his judgment of sentence.  *Id*.  Thus, we find Suilamon's sentences legal in this regard.

Suilamon also claims that the trial court illegally sentenced him on his conviction of simple assault because it should have merged with aggravated assault for sentencing purposes.  Pursuant to the merger doctrine,

> [n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.  Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

The true test for determining whether particular crimes merge is not whether criminal acts are successive steps in a sequence of acts, but whether one crime necessarily involves the other.  ***Commonwealth v. Cavanaugh***, 420 A.2d 674, 676 (Pa. Super. 1980).  It is well established that the elements of simple assault are necessarily included in the crime of aggravated assault.[10]  *Id*.

Instantly, Suilamon was convicted and sentenced for aggravated and simple assault at each docket number[11] for his striking Truesdale and Crystal

---

[10] ***See*** 18 Pa.C.S. § 2701(a); 2702(a).
[11] CP-51-CT-0012934 and CP-51-CR-0012936.

Roame in the head with a metal pipe. Similarly, in **Cavanaugh, supra**, the defendant struck the victim on an arm, both legs, and the head with a tire iron. The victim sustained lacerations of the head, requiring nine stiches. **Id.** at 675. The defendant was sentenced to 11 ½ and 23 months for simple assault and aggravated assault. **Id.** On appeal, the defendant raised the issue of merger. Our Court found that the trial court erred in sentencing defendant on the lesser included offense, simple assault, where the criminal conduct arose from a single act. **Id.** at 676.

Similarly, here Suilamon's conduct arose from a single criminal act committed on each victim; thus, the one crime necessarily included the other. Accordingly, Suilamon's convictions of aggravated and simple assault should merge for sentencing purposes.

Finally, Suilamon claims that his probationary sentences for simple assault and recklessly endangering another person were illegal because they exceed the statutory maximum set forth in 18 Pa.C.S. § 106(b)(7). Instantly, the sentencing order clearly shows that Suilamon was sentenced to two years' probation for each of these offenses.[12] Therefore, this claim is meritless.

_____

[12] Moreover, section 106(b)(7)(classes of offenses) refers to crimes where a sentence of death or imprisonment is authorized. It does not mention probation. In this case, a person convicted of simple assault and REAP convictions, as second-degree misdemeanors, may not be sentenced to **a term of imprisonment** of more than two years. **See** 18 Pa.C.S. § 106(b)(7).

Convictions affirmed.   Judgment of sentence for simple assault vacated.  Case remanded for resentencing.[13]  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/24/2017

---

[13] Because the court ordered Suliamon's probationary sentence for simple assault to run *consecutive* to his period of incarceration for aggravated assault, the sentencing scheme is upset and we must remand for resentencing.  ***Cf. Commonwealth v. Murphy***, 462 A.2d 853 (Pa. Super. 1983) (remand for resentencing not necessary where court's simple assault probationary sentence ran concurrent to term of imprisonment for aggravated assault).